UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

PACKARD SQUARE LLC,

    *Plaintiff*,

 -against-

CANYON PARTNERS LLC and CANYON
PARTNERS REAL ESTATE LLC,

    *Defendants*.

------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1-29-19

18 Civ. 5724 (PAC)

**OPINION & ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

 This action concerns a $50 million loan and mortgage entered into between Plaintiff Packard Square LLC and an entity created by Defendants Canyon Partners LLC and Canyon Partners Real Estate LLC for the development of a luxury apartment and high-end retail complex in Ann Arbor, Michigan. Plaintiff seeks compensatory and other damages arising from Defendants' alleged "weaponizing" of the loan to charge exorbitant interest fees and ultimately force control of the property out of Plaintiff's hands and into Defendants'.

 Plaintiff is incorporated in Michigan. The loan and mortgage agreements specify Michigan law and the courts of Michigan. The project was located in Michigan. A Michigan-based receiver was appointed to control the project by a Michigan state court. There are several other court proceedings relating to the same project in Michigan. Yet Plaintiff chose to file this action in the Southern District of New York.

 Defendants move to transfer the case to the Eastern District of Michigan, which Plaintiff opposes. Pursuant to 28 U.S.C. § 1404(a), the Court GRANTS the motion to transfer.

## BACKGROUND

Plaintiff Packard Square LLC ("Packard Square") is incorporated and does business in Michigan. (Dkt. 28 ¶¶ 1, 4.) Defendants Canyon Partners LLC and Canyon Partners Real Estate LLC (together "Canyon") are companies incorporated in Delaware and headquartered in California that loaned $53,783,184—through an entity formed for the purpose of facilitating the loan, Can IV Packard Square LLC ("Can IV")—to Packard Square for the development of a luxury apartment and high-end retail complex in Ann Arbor, Michigan (the "Packard Square project"). (*Id.* ¶¶ 5-6; Dkt. 53 ¶¶ 1, 4.) The loan and mortgage agreements governing this construction loan include Michigan choice of law provisions and forum selection clauses. (Dkt. 53 Ex. 2 ¶¶ 11.18, 11.27; *Id.* Ex. 3 §§ 14.1, 20.) A promissory note entered into by Packard Square and Can IV for the value of the loan also specifies that it "shall be governed by . . . the local laws of the State of Michigan." (*Id.* Ex. 4 § 3.2.)

On October 21, 2016, Can IV successfully moved for appointment of a receiver over the Packard Square project in Michigan state court, where discovery is ongoing. (Dkt. 54 ¶¶ 2, 5-6 & Ex. 1.) In 2017, Packard Square filed for bankruptcy in the U.S. Bankruptcy Court for the Eastern District of Michigan. (*Id.* ¶ 7; Dkt. 53 ¶ 16.) There are at least two additional Michigan lawsuits related to the Packard Square Project. (*See* Dkt. 54 ¶ 9.)

Plaintiff asserts four causes of action—two pursuant to the Racketeer Influenced and Corrupt Organizations ("RICO") Act, one for conversion, and one for aiding and abetting a breach of fiduciary duty. (Dkt. 28.) Plaintiff alleges that Defendants, together with their officers, employees, and agents—including Can IV—created an enterprise on or about September 1, 2014 "for the common purpose of defrauding and cheating Packard Square" and other property owners "out of their equity in property and development projects," including the Packard Square project. (*Id.* ¶¶ 12-15.) In furtherance of their scheme to defraud Packard

2

Square, Plaintiff asserts that Defendants committed mail fraud, wire fraud, extortion, and fraudulently made false oaths in connection with a related bankruptcy matter. (*Id.* at ¶¶ 16-18.) Specifically, Plaintiff alleges that Defendants "weaponized" the loan to Packard Square "through a persistent fraudulent campaign of bogus default notices and extortion," refused to release funds, and ultimately took control of the project through the appointment of a receiver by making false statements to a Michigan state court. (*Id.* at ¶ 19.)

During an August 30, 2018 conference, the Court encouraged Defendants to file a motion to transfer to federal court in Michigan rather than a motion to dismiss and before Plaintiff further amended its complaint.[1] (Dkt. 46 at 4:2-5:10, 18:16-25, 22:13-21.) Defendants filed their Motion to Transfer to the Eastern District of Michigan on September 14, 2018. (Dkt. 51.) On December 3, 2018, Plaintiff submitted a letter seeking leave to file a further amended complaint to add details of three additional victims of Canyon's alleged loan-to-own schemes. (Dkt. 65.)[2] This Court held a conference regarding the pending motions on January 28, 2019.

## DISCUSSION

### I. Standards

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought. . . . ." 28 U.S.C. § 1404(a). The purpose of this provision is "to prevent waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Synca Direct Inc. v. SCIL Animal Care Co.*, No. 15-CV-2332 RJS, 2015 WL 3883281, at *1 (S.D.N.Y. June 22, 2015) (citation omitted).

---

[1] This case was originally assigned to the Hon. Richard J. Sullivan, but was reassigned to the Hon. Paul A. Crotty on October 25, 2018.

[2] Plaintiff also moved for limited expedited discovery, but later withdrew its request. (Dkts. 48, 70.)

3

If an action could have been brought in the transferee district, courts have broad discretion to make determinations of convenience guided by factors which include:

> (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties.

*New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010). "The Court may also consider the forum's familiarity with the governing law, and trial efficiency and the interest of justice." *Cain v. Twitter, Inc.*, No. 17 CIV. 122 (PAC), 2017 WL 1489220, at *2 (S.D.N.Y. Apr. 25, 2017). No single factor is determinative, and weighing the balance is an equitable task of the Court. *Id.*

## II. Analysis

### A. Motion to Transfer

There is no doubt that the present complaint could have been brought in the Eastern District of Michigan. Both the Southern District of New York and the Eastern District of Michigan have federal question jurisdiction over the RICO claims alleged in the Complaint. *See* 28 U.S.C. § 1331; 18 U.S.C. § 1965.

#### 1. Plaintiff's Choice of Forum

Plaintiff's choice of the Southern District of New York is entitled to some deference and weighs against transfer. This factor, however, carries limited weight because "the operative facts lack a meaningful connection to the chosen forum." *Ahrens v. Cti Biopharma Corp.*, No. 16 CIV. 1044 (PAE), 2016 WL 2932170, at *4 (S.D.N.Y. May 19, 2016).

#### 2. Convenience of Witnesses

While at least three witnesses are located in New York, the majority of witnesses are from elsewhere. (*See* Dkt. 53 ¶¶ 3, 5; Dkt. 56 ¶¶ 3, 7-9.) Moreover, many of the witnesses

4

Packard Square claims are from New York are individuals who are not named in the amended complaint, may not be based in New York, may not have been involved with the Packard Square project, or would be duplicative of one another. *See Baytree Capital Assocs., LLC v. Quan*, No. 08 CIV. 1602 (LLS), 2008 WL 11322599, at *2 (S.D.N.Y. May 1, 2008) ("When weighing the convenience of the witnesses, courts must consider the materiality, nature, and quality of each witness, not merely the number of witnesses in each district."); *Intria Corp. v. Intira Corp.*, No. 00 CIV. 7198 (AGS), 2000 WL 1745043, at *3 (S.D.N.Y. Nov. 27, 2000) ("at most one of these witness' convenience is relevant to the balance of convenience analysis"). New York thus does not appear to be a more convenient location for potential witnesses than Michigan.

### 3. Location of Documents

Key documents are located in Michigan and California, not New York. In fact, discovery is already significantly underway in Michigan state court. (Dkt. 54 ¶ 5.) Canyon's documents relating to the loan and mortgage agreements are located in California, (Dkt. 53 ¶¶ 9-10), and any documents that Defendants might seek from Plaintiff would be located in Michigan. Sources of proof are not relatively accessible from New York, as there is virtually no nexus between the subject matter of the litigation and New York, the parties do not reside in New York, and documents are not stored in New York.

### 4. Convenience of Parties

It is more convenient for both parties to proceed in the Eastern District of Michigan than the Southern District of New York. Plaintiff is based in Michigan and Defendants are based in California. (Dkt. 53 ¶ 2.) Neither party has a strong tie to New York. That the parties are already engaged in litigation in Michigan further indicates that Michigan is a convenient forum and that it would be more efficient to try this case in a Michigan than New York federal court.

### 5. Locus of Operative Facts

The locus of operative facts lies in Michigan, not New York. The Packard Square project is located in Michigan and is being run by a receiver in Michigan. (Dkt. 53 ¶¶ 13-15.) *See Gibbs & Hill, Inc. v. Harbert Int'l, Inc.*, 745 F. Supp. 993, 997 (S.D.N.Y. 1990). The allegedly false statements were made in courts in Michigan. (Dkt. 53 ¶¶ 15-16.) Although there may have been an introductory meeting in New York (which Canyon disputes), (Dkt. 53 ¶ 17), this possible tie to New York is far outweighed by the activities in Michigan,[3] *see Ocean Walk Mall LLC v. Kornitzer*, No. 01 CIV. 213 (DLC), 2001 WL 640847, at *2 (S.D.N.Y. June 11, 2001).

### 6. Availability of Process

This factor is neutral; neither party has stated that a witness would be unwilling to testify. *Pace v. Quintanilla*, No. 13 CIV. 91 RJS, 2013 WL 5405563, at *4 (S.D.N.Y. Sept. 23, 2013).

### 7. Relative Means of Parties

The parties do not make representations about their relative means. This factor is neutral.

### 8. Other Factors

The loan and mortgage agreements governing the dispute have Michigan jurisdiction selection clauses and choice of law provisions. The agreements also stipulate that: "the State of Michigan has a substantial relationship to the underlying transaction. . . ." (Dkt. 53 Ex. 2 ¶ 11.18 & Ex. 3 ¶ 14.1.) While these provisions may not binding here since Canyon was not a party to the agreements, they are relevant. *See Gibbs*, 745 F. Supp. at 997 ("The Second Circuit likewise has found choice of law provisions relevant for purposes of evaluating a § 1404(a) motion.").

---

[3] Plaintiff supports its RICO claim by pointing to other projects where Defendants engaged in allegedly predatory loan practices around the country, including one in Brooklyn. (*See* Dkt. 56 ¶¶ 3, 20-21.) These projects do not shift the locus of operative facts to New York. If anything, they show that New York is no more convenient than Florida, Georgia, Nevada, California, South Carolina, or other states in which there may be victims of Defendants' practices.

In any event, a Michigan federal court would be more familiar than this Court with Michigan state law, which is likely to apply to the claims for conversion and aiding and abetting a breach of fiduciary duty. *See Gibbs*, 745 F. Supp. at 997.

The interests of justice counsel in favor of transferring the case to Michigan, where the project was located and where the events at issue occurred. *See Synca Direct*, 2015 WL 3883281, at *2 ("[T]ransferring this case would further the interests of justice and promote systemic judicial economy by requiring the parties to litigate their dispute in a forum with at least some connection to the facts.").

### B. Motion to Amend

Packard Square wishes to further amend its complaint to add details of three new victims for its RICO claims. (Dkt. 65.) These details involve projects outside New York, and do not convince the Court that New York is the proper forum. The Court defers decision on leave to amend to the transferee court. *See Schlieben v. Northfield Mount Hermon Sch.*, No. 02 CIV. 2868 (LMM), 2004 WL 2093556, at *1 (S.D.N.Y. Sept. 17, 2004).

## CONCLUSION

The 28 U.S.C. § 1404(a) factors favor transferring this action. The Court GRANTS Defendants' motion to transfer. The Clerk of Court is directed to terminate the motions at Dkt. 51 and transfer the case. All other pending matters shall be transferred to the Eastern District of Michigan.

Dated: New York, New York
January 24, 2019

SO ORDERED

_____
PAUL A. CROTTY
United States District Judge

7