UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PACKARD SQUARE LLC,

    Plaintiff,                                                  Civil Action No. 19-CV-10374

vs.                                                           HON. BERNARD A. FRIEDMAN

CANYON PARTNERS LLC, et al.,

    Defendants.
_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S RICO CLAIMS AND DECLINING TO EXERCISE SUPPLEMENTAL JURISDICTION OVER THE REMAINING CLAIMS

This matter is presently before the motion of defendants Canyon Partners LLC and Can IV Packard Square LLC (collectively, "Canyon") to dismiss the second amended complaint ("SAC") [docket entry 22], and on the individual defendants' motion to dismiss and joinder in Canyon's motion to dismiss [docket entry 30]. Plaintiff has responded, and defendants have replied, to both motions. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide these motions without a hearing. For the reasons stated below, the Court shall grant defendants' motions as to plaintiff's federal claims and decline to exercise supplemental jurisdiction over the remaining claims.

This case is one of several that has arisen from a construction project. In 2014, plaintiff Packard Square LLC ("Packard Square") borrowed money from defendants Canyon Partners LLC and Can IV Packard Square LLC (collectively, "Canyon") to build an apartment building and retail space in Ann Arbor, Michigan. The project did not proceed in a timely and businesslike fashion, and in 2017 Packard Square filed for Chapter 11 bankruptcy protection. In an opinion issued in October 2017, the Bankruptcy Court summarized the tortured history of the project, and the parties' growing antagonism toward one another, as follows:

Pre-petition, in October 2014, the Debtor obtained a construction loan from Canyon in the maximum principal amount of $53,783,184.00 (the "Construction Loan") to finance the construction of "a 360,000 square foot mixed-use development [project] on a six and a half acre site on Packard Street in Ann Arbor, Michigan," including "249 residential units with high-end amenities, nearly 30,000 square feet of retail space and over 450 parking space[s] including an underground parking garage" (the "Project"). The Debtor signed a promissory note, and other loan documents, and granted Canyon a mortgage on the real property of the Project "together with the related easements, privileges and licenses, and the buildings, structures, improvements, fixtures and personal property located [on it]" to secure the Debtor's indebtedness for the Construction Loan. The Debtor also executed an assignment of leases and rents in favor of Canyon.

B. The appointment of a receiver in the state court suit

On October 21, 2016, Canyon filed suit against the Debtor in Washtenaw County Circuit Court, in the case of *CAN IV Packard Square LLC v. Packard Square, LLC, et al.*, Case No. 16–000990 CB (the "state court case"). In its verified complaint in the state court case, Canyon requested the appointment of a receiver over the property securing its debt, due to the Debtor's alleged failure "to fulfill its obligations to complete construction of improvements for which funds were provided in accordance with the relevant loan agreements" and "to maintain the [p]roperty i[n] a suitable condition." Canyon also sought foreclosure of its mortgage in the state court complaint.

On October 27, 2016, the state court held a hearing in which it heard oral argument regarding the appointment of a receiver. Counsel for Canyon and counsel for the Debtor both appeared at the hearing and argued their respective positions at length, for and against the appointment of a receiver. During the hearing, Canyon alleged, in relevant part, that there had been multiple material defaults by the Debtor, in the form of missing critical construction milestone dates under the terms of the Construction Loan and the mortgage, despite Canyon having granted some extensions of those dates. Canyon alleged that, among other defaults, the Debtor had defaulted by missing the "substantial completion date which was October 25[, 2016]," and that the Debtor had defaulted on its obligation to enclose the building of the Project by July 1, 2016, which was "a critically important aspect of the [construction] schedule" to avoid damage to

the building, from the inclement weather that had already occurred and that would be getting worse due to the approaching winter season. Canyon alleged that although it had worked with the Debtor and extended the original contractually-agreed date of July 1, 2016 to August 26, 2017, the Debtor had also defaulted on its promise to enclose the building by the extended date. According to Canyon, that default still had not been cured, and the building was "still open and exposed to the elements" at the time of the hearing. Canyon also alleged that Gaylor Electric Inc. d/b/a Gaylor, Inc. ("Gaylor") and Jermor Plumbing & Heating, Inc. ("Jermor"), two subcontractors who had worked on the Project but had not been paid, had recorded construction liens against the property subject to its mortgage, and that more liens would soon be filed based on the Debtor's firing of Quandel Construction Group, Inc. ("Quandel"), the former general contractor for the Project. Canyon informed the Court that due to the Debtor's defaults, it had accelerated the promissory note and so the promissory note was due and owing in full. Canyon argued that "under either the [parties'] contract or the Construction Lien Act, the [c]ourt was authorized to appoint a receiver under the current existing circumstances" because the Project was only partially completed; the Debtor had defaulted on its obligations under its contract with Canyon; and the building was not enclosed and at risk of being damaged.

The Debtor argued that although there had been "technical defaults" due to missed construction milestone dates, the Debtor was entitled to an extension of the construction milestone dates of "up to 150 days" due to the force majeure clause in the parties' loan agreement. Debtor also argued that the "fundamental equities" of the case favored denying Canyon's request for the appointment of a receiver.

At the conclusion of the hearing, the state court gave a bench opinion in which it rejected the Debtor's arguments and ruled that it would "appoint McKinley, Incorporated ["McKinley"] as receiver for the [P]roject and that that [would] be done immediately." On November 1, 2016, the state court entered an order appointing McKinley as the receiver (the "Receivership Order").

\* \* \*

During the more than 10–month period after the state court appointed the Receiver and before the Debtor filed this bankruptcy case, there was considerable activity on the Project by the Receiver and its chosen general contractor on the project, O'Brien Construction

3

Company, Inc. And there was a great deal of litigation in the state court case, between the Debtor and some of the construction lien holders on the one hand, and the Receiver and Canyon on the other hand.

The state court case has been contentious. For example, almost immediately after appointment of the Receiver, the Debtor appealed the Receivership appointment and sought a stay pending appeal. The Debtor also sought an order requiring the Receiver to use the Debtor's preferred general contractor at the time, C.E. Gleeson Constructors, Inc., in place of the Receiver's chosen contractor O'Brien. [Footnote: Quandel Construction Group, Inc. had been the Debtor's general contractor on the Project, but disputes between the Debtor and Quandel led the Debtor to terminate Quandel, effective October 17, 2016.] The state court heard these motions on November 17, 2016, and denied them. The Debtor then filed a motion for reconsideration of the Receivership order on December 8, 2016, which the state court denied on December 19, 2016. The Debtor appealed the Receivership order to the Michigan Court of Appeals, where the appeal remains pending.[1] The Debtor thereafter filed various oppositions and/or objections against the Receiver in the state court. The state court litigation has also included various motions and objections filed by some of the creditors claiming construction liens predating the receivership. This includes motions by Gaylor Electric, Inc. ("Gaylor") and Quandel seeking relief from, and amendment of, the Receivership Order, a motion by Gaylor for leave to file a complaint against the Receiver for claimed breaches of fiduciary duty, and objections by Gaylor and Quandel to reports of the Receiver. [Footnote: The motions by Gaylor and Quandel were concurred in by two other construction lien claimants, Amthor Steel and Zeeland Lumber and Supply Co.] These matters were heard by the state court on June 22, 2017, and the Gaylor and Quandel motions were denied and their objections were overruled.

Most recently in the state court case, on August 31, 2017, the Receiver and Canyon filed a joint motion seeking to increase the total amount of the Receivership Loan that the Receiver is authorized to

---

[1] In January 2018, the Michigan Court of Appeals affirmed the appointment of a receiver. *See CAN IV Packard Square LLC v. Packard Square LLC*, No. 335512, 2018 WL 521843, at *5 (Mich. Ct. App. Jan. 23, 2018). The Michigan Supreme Court denied leave to appeal, *see* 917 N.W.2d 624 (Mich. 2018), and it denied Packard Square's subsequent motion for reconsideration. *See* 922 N.W.2d 346 (Mich. 2019).

4

> borrow, in order to complete the Project. In round numbers, the motion sought to increase the maximum borrowing amount from the original maximum of $19.7 million (approved in November 2016) to $37.5 million, an increase of $17.8 million. The motion alleged, among other things, that: (1) "[s]ince entry of the Receivership Order, the Receiver has dutifully executed his obligations and has taken all necessary steps to complete the Project," and to date, had incurred costs of $8.9 million; (2) the remaining undrawn amount of the original $19.7 million Receivership Loan was insufficient to complete construction of the Project; (3) the original $19.7 million loan authorization had been based on the Debtor's budget, which had proven inadequate and unrealistic; and (4) the costs to complete the Project were significantly higher because of deficient work done by the Debtor and other specified problems caused by the Debtor.
>
> The joint motion was noticed for a hearing that was to have occurred in the state court on September 7, 2017. The hearing did not occur, however, because the Debtor filed this bankruptcy case two days before the hearing.

*In re Packard Square LLC*, 575 B.R. 768, 771-74 (Bankr. E.D. Mich. 2017) (Bankruptcy Court's footnote omitted; this Court's footnote 1 supplied).

Noting the importance of permitting the receiver to complete the project, the Bankruptcy Court dismissed Packard Square's Chapter 11 petition. The Bankruptcy Court noted that it was

> mindful of the long list of complaints made by the Debtor and some of the construction lien claimants (especially Quandel and Gaylor), both in the state court to a large extent, and now in this Court, about the state court's appointment of the Receiver; about the original Receivership Loan; about the Receiver's borrowing and disbursements under that loan; about actions and alleged inactions by the Receiver and O'Brien; and more recently, about the efforts by the Receiver to increase and amend the terms of the Receivership Loan. These many complaints have been and are very much disputed by Canyon and also by the Receiver, and some of these complaints were already heard, considered, and rejected by the state court.
>
> Under the circumstances, the state court in the receivership case is the appropriate and available forum for the complaining parties to raise

> their complaints and seek relief. (And to the extent they . . . suffer adverse rulings by the state trial court, aggrieved parties may seek relief in the Michigan Court of Appeals). While the Debtor, Quandel, Gaylor, and perhaps some of the other lien holders would rather escape from the state court to this Court, this Court is confident that the state court is both legally able, and fully capable, to fairly hear and decide the merits of the complaints. No party in this case has given this Court any valid reason to think otherwise.

*Id*. at 782. This Court subsequently affirmed the Bankruptcy Court's rulings. *See In re Packard Square, LLC*, 586 B.R. 853 (E.D. Mich. 2018).

Litigation over the Packard Square project has continued. In the above-referenced Washtenaw County action, *Can IV Packard Square LLC v. Packard Square LLC*, No. 16-990-CB (Washtenaw Cty. Cir. Ct.), the court issued a judgment of foreclosure in Canyon's favor in September 2018, *see* Canyon's Ex. 3, and Packard Square's appeal of that judgment was dismissed in June 2019. *See Can IV Packard Square, LLC v. Packard Square, LLC*, No. 346218, 2019 WL 2517591 (Mich. Ct. App. June 18, 2019). Prior to that, in August 2017, Canyon sued its construction consultant in this Court for failing to monitor and report on the project's progress and for recommending payment on draws on the loan. *See Canyon Partners Real Estate LLC v. Newbanks/Wash. Constr. Consulting Servs., Inc.*, No. 17-cv-12852 (E.D. Mich.). The Court dismissed that case in April 2019. In May 2019, Canyon filed suit in Washtenaw County Circuit Court against Packard Square's sole member, Craig Schubiner, who guaranteed Packard Square's performance on the construction loan agreement, for the "completion cost deficiency." That case was removed to this Court and is pending. *See Can IV Packard Square LLC v. Schubiner*, No. 19-cv-12360 (E.D. Mich.).

In June 2018, Packard Square commenced the instant action in the Southern District of New York, and in February 2019 that court transferred the case to this district pursuant to 28

6

U.S.C. § 1404(a). In the interim, Packard Square has amended the complaint twice. The SAC, which names Canyon and the individual defendants (Canyon's owners and directors, Joshua Friedman, Maria Stamolis, Gerald Goldman, Kevin Scholz, and Martha Page), asserts claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO") (Counts I and II), for fraud (Count III), for aiding and abetting breach of fiduciary duty (Count IV), and under a California statute regarding unfair business practices (Count V). The gist of the complaint is that defendants "weaponzied the loan from the very outset so they could use it to seize control of the Packard Square project and steal Packard Square's equity in the project for a fraction of its actual value." SAC ¶ 2. Further, plaintiff alleges:

> 3. The Defendants have engaged in a criminal scheme over the past four and a half years to defraud Packard Square by, among other things:
>
> a. withholding loan funds while extorting money and concessions from Packard Square;
>
> b. perpetrating a persistent campaign of default notices based upon bogus non-monetary defaults;
>
> c. pressuring Packard Square to sign a deed-in-lieu of foreclosure when no loan payments were ever missed or late;
>
> d. fraudulently taking control of the Packard Square project through the appointment of a Receiver by perpetrating numerous lies to a Michigan State Court, and thereafter manipulating the Receiver to slow-down dramatically the construction progress, with the fraudulent goal of letting the Defendants charge exorbitant interest and fees to Packard Square in order to capture as quickly as possible Packard Square's equity in the project;
>
> e. precluding Packard Square from assuming the construction contracts entered into by the Receiver;
>
> f. preventing Packard Square from refinancing the loan with a legitimate lender by demanding payment of more than $50 million

based upon delinquent fraudulently inflated payoff letters, which terms were designed to expire almost immediately after their issuance, as a condition of releasing their liens against the project;

g. vastly overpaying third parties including, but not limited to, the Receiver to gain its loyalty and assistance in perpetrating Defendants' fraudulent objectives, while alleging that Packard Square was responsible for these unconscionable costs;

h. intentionally lying to the United States Bankruptcy Court about the project's value, debt balance and other facts to cause the dismissal of Packard Square's bankruptcy petition;

i. foreclosing on Packard Square's property without any evidentiary hearings or admissible evidence of Packard Square's alleged defaults, while failing to provide most relevant discovery in the foreclosure suit brought by Can IV Packard Square, LLC against Packard Square in Washtenaw County (the "Washtenaw County Lawsuit"); and

j. fraudulently not leasing the project in order to artificially depress the project's value until after Packard Square's redemption rights are extinguished.

4. This pattern of criminal activity–a deceitful loan-to-own scheme–was not an isolated incident. Rather, it was part of the Defendants' regular way of conducting their business, leaving Packard Square, and numerous other victims, in their devious wake. Indeed, Packard Square and its counsel, through their due diligence efforts, have identified at least ten additional victims of Defendants' scheme. In schemes with striking similarities–Defendants have a well-thumbed playbook–premeditated to victimize independent developers throughout the country. As the widow of one victim said, "They [Canyon and its animating participants] steal your money, steal your time, steal your property, and steal your future."

*Id.* ¶¶ 3-4. Over the next ninety-three pages of the SAC, plaintiff expands on its "weaponized loan" theory and attempts to characterize the alleged misconduct that is summarized in ¶¶ 3-4 as evidence of a criminal enterprise that has victimized others using similar methods.

The Court shall dismiss plaintiff's RICO claims for the reasons articulated by Canyon

at pages 9-20 of its motion, in which the individual defendants join. Many of the allegations made in support of these claims are the same or similar to those that Packard Square made in its counterclaims in the Washtenaw County action. Those counterclaims, a copy of which is attached to Canyon's motion as Exhibit 2, included a claim that Canyon breached the loan agreement by, among other things, "unjustifiably withholding monthly loan disbursements," "requesting that the Court appoint a receiver without cause," "improperly declaring that Packard had breached the same," "improperly declaring defaults when there were none and thereafter not rescinding its default letters after the basis for the default letter was cured or corrected," and "refusing to deal and negotiate with Packard [Square] in good faith." *Id.* ¶¶ 64-68. Packard Square also asserted a claim for "lender liability," alleging that Canyon committed various "wrongful acts," including "interfering with the relationship between Packard [Square] and its contractors and subcontractors . . . and its retail and residential tenants," "inserting itself into the business decisions, financial affairs, and other decisions by Packard [Square]," "approving pay applications[] and other costs and then refusing to fund those payments," "refusing to deal as a form of affirmative inducement or pressure to cause Packard [Square] to break its contract with third parties," and "refusing to allow Packard [Square] to utilize funds that had been agreed upon between the Parties." *Id.* ¶ 72. Packard Square also claimed that Canyon "breached its fiduciary duty by taking adverse actions to [Packard Square's] interest to obtain an advantage" and that Canyon converted loan funds by failing to disburse draw amounts. *Id.* ¶¶ 77, 81. Further, Packard Square claimed that Canyon tortiously interfered with business relationships and breached an implied covenant of good faith by, among other things, interfering with Packard Square's "contractors, suppliers, subcontractors, retailers and tenants" and failing "to pay the draws as requested." *Id.* ¶¶ 84-86, 91.

In February 2019, Judge Brown granted Canyon's motion for summary disposition as to all of these counterclaims. *See* Canyon's Ex. 5. He found that Packard Square's "allegations of breach of contract are not supportable in fact or in law, are without merit, as previously determined by this Court, and are baseless." *Id.* at 2. He disposed of Packard Square's lender liability claim on the grounds that Canyon "acted in accordance with its contractual rights" and that the claim was based on "certain [alleged] duties which the Court finds to be wholly speculative and without merit." *Id.* at 3. Judge Brown similarly disposed of Packard Square's breach of fiduciary duty and conversion claims on the grounds that it had defaulted under the loan agreement and that Canyon simply "exercised its contractual rights." *Id.* And Judge Brown disposed of Packard Square's tortious interference and breach of implied covenant of good faith claims on the grounds that had done nothing improper in withholding payments and seeking the appointment of a receiver, and that it did nothing more than enforce its contractual rights. *Id.* at 3-4.

Plaintiff's RICO claims are barred by the doctrines of collateral estoppel and res judicata because these are claims that could have been brought in the Washtenaw County action and they are based on allegations that are the same or similar to those which actually were raised in that court. *See, e.g., Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) ("Issue preclusion . . . bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim.") (internal quotation marks and citation omitted); *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 467 n.6 (1982) ("Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."). Plaintiff is, in effect, doing nothing more in the present case than placing a new label on old allegations and claims. Judge

10

Brown considered these claims and found them to be "baseless" and "without merit." Plaintiff's remedy was to appeal Judge Brown's dismissal of its counterclaims, not to recast those claims under a different name and in another court. Counts I and II are therefore dismissed. The Court declines to exercise supplemental jurisdiction over the remaining claims, as it has now "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Accordingly,

IT IS ORDERED that defendants' motions to dismiss the SAC are granted as to Counts I and II.

IT IS FURTHER ORDERED that Counts III-V of the SAC are dismissed pursuant to 28 U.S.C. § 1367(c)(3).

s/Bernard A. Friedman  
BERNARD A. FRIEDMAN  
SENIOR UNITED STATES DISTRICT JUDGE

Dated: January 23, 2020
       Detroit, Michigan